## HOUSTON BELT & TERMINAL RY. CO. v. DAVIS et al. (No. 8591.)

(Court of Civil Appeals of Texas. Galveston. Jan. 9, 1925. Rehearing Denied March 12, 1925.)

1. Carriers ⟾192—Contract for carriage of earth requiring defendants to pay one-half of cost and expenses, held to include amount paid by railway to injured employee.

Under contract for carriage of earth by railway, contractor agreed to pay certain kinds of expenses incurred by railway in carrying out contract, "and one-half all other expenses of every kind, which might be directly allocated to the use of such trains," held that amount paid railway employee for injuries received by him while assisting in operation of a train in performing work undertaken under contract was an expense "which might be directly allocated" to use of railway's trains in carrying out contract; rule of ejusdem generis being inapplicable.

2. Evidence ⟾20(I) — Common knowledge that amounts paid by business enterprise for damages sustained by employees for personal injuries are part of business expenses.

It is a matter of common knowledge that amounts lawfully paid by any business enterprise for damages sustained by its employees, for personal injuries received in conducting business, are a part of business expenses.

3. Evidence ⟾20(2)—Common knowledge that amounts paid for damages for injuries sustained by employees are necessary expenses in operation of railways.

It is a matter of common knowledge that amounts paid for damages for injuries sustained

by employees of railway companies are regarded by our national and state Railroad Commissions as necessary expenses in operation of railways, which must be considered in determining what is a reasonable rate to be allowed for transportation charges.

**4. .Pleading &#9758;205(2)—Issue of fact cannot be raised by general demurrer.**

An issue of fact cannot be raised by general demurrer.

**5. Indemnity &#9758;8—Provision of contract for unloading materials held inapplicable to injuries sustained by railway employees in moving trains.**

Provision of contract for carriage of earth by railway, by which contractor agreed to idemnify railway against all expenses for injury or death of persons other than employees of railway in unloading materials, *held*, to have no relation to injuries sustained by railway's employees engaged in operating its trains transporting earth between points named in contract.

**6. Carriers &#9758;192—Railway held not entitled, under contract for carriage of earth at public switching rate, to recover for trackage charges paid municipality.**

Under contract for carriage of earth by railway at public switching rate of $6.50 per car, railway *held*, not entitled to recover of defendants for trackage charges paid municipality for use of its tracks; such switching charges being intended to include whole cost of transportation from points named in order fixing them.

**7. Customs and usages &#9758;12(1)—Custom and usage not binding on party to contract without notice or unless they were matters of common knowledge.**

No custom or usage can be binding upon party to a contract for carriage of earth, unless it had notice thereof or such custom or usage was matter of common knowledge.

On Motion for Rehearing.

**8. Evidence &#9758;47—Rules of Interstate Commerce Commission, which have force and effect of statutes, not required to be pleaded.**

Rules of Interstate Commerce Commission, which have force and effect of public statutes, are not required to be pleaded.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by the Houston Belt & Terminal Railway Company against B. F. Davis and others. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Franklin & Blankenbecker and Campbell, Myer, Simmons & Hawkins, all of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellees, to recover a balance alleged to be due it upon a contract of carriage by which the plaintiff, for the consideration stated in the contract, undertook to transport for defendants 40,000 cubic yards of earth from the municipal wharves at Manchester, in the city of Houston, to the plant of the Japan Cotton Trading Company in Harris county, a distance of about 10 miles.

Plaintiff's petition, after alleging the execution of the contract which is attached to the petition as Exhibit A, and its approval by the Railroad Commission of Texas, contains the following allegation:

That "among other things which more specifically appear in Exhibit A (defendants agreed to pay) one-half of all costs and expenses incurred, sustained, or paid by plaintiff in and for the operation of the train or trains and engine or engines used in said transportation service, including all expenses of every kind and character which might be directly allocated to the use of said trains, engines, and cars and the movement thereof in said service; for a more particular description of the terms of said agreement_reference is hereby made ˙to said Exhibit A.

"(8) That, while engaged in the transportation of the earth contemplated in said agreement, and on or about June 29, 1920, one of plaintiff's employees, one A. R. Davis, was.injured by the negligence of one or more of plaintiff's employees by reason of a side board on one of the cars used in said service giving way, whereby said employee was caught between said side board and the brake staff on said car, thereby severely crushing, bruising, and otherwise injuring his leg, by reason of which said employee was severely and painfully injured, and was incapacitated and prevented from engaging in any work for a period of approximately 153 days. That plaintiff paid said employee the sum of $1,060 in compromise and full settlement of any and all claims for damages arising by reason of such injury, while engaged in the work and service aforesaid; and plaintiff avers that the amount paid in settlement of his claim for injuries sustained constituted' a just and reasonable settlement, and that plaintiff thereby discharged a legal obligation at less expense than would have been incurred had said claim been permitted to go to suit and judgment; and plaintiff further avers that the amount paid in settlement of this injury claim, as aforesaid, was such an expense as arose out of and was directly allocated to the use of said train engaged in the service contemplated by said agreement, and avers that by the terms of said agreement defendants bound themselves and became and are liable to pay to plaintiff one-half of the expense of compromising and settling the claim as aforesaid, by reason of which defendants.became obligated to pay plaintiff the sum of $530.

"(9) Plaintiff avers that the transportation of the earth contemplated in said agreement was and could only be effected by transporting and hauling the same for a part of the distance to be covered over a municipal railway track owned by the city of Houston, and that said' city of Houston at the time in question made

and levied against plaintiff a charge of 50 cents per car for each and every loaded car hauled over said track, and that, in transporting said earth, a total of 1,987 cars was transported and hauled by plaintiff over said municipal track, whereby plaintiff became obligated to pay and paid the city of Houston the sum total of $993.50 for the use of its track as aforesaid. Plaintiff further avers that it owned no track over which said earth could have been transported and hauled from the point of origin set out in said agreement, and that defendants knew, or by the exercise of ordinary care could and would have known, that said hauling and transporting was to be done over the municipal track belonging to the city of Houston; and plaintiff further avers that said expense arose out of, and was directly allocated and chargeable to, the use and operation of said trains engaged in the service contemplated and required by said agreement, and that by the terms of said agreement defendants bound themselves to pay to plaintiff one-half of said trackage expense as aforesaid, by reason of which defendants became obligated to pay plaintiff the sum of $496.75.

"(10) That under the accounting rules of the Interstate Commerce Commission, and by universal railroad custom and usage, liabilities and expenditures of the character aforesaid are chargeable to expense of operation, and each and both of said liabilities, personal injury and trackage, did in fact and under said rules and custom constitute a part of the expense and cost of operating the trains used in the service contemplated and required by said agreement."

The pertinent provisions of the contract are as follows: Article 1, after reciting the agreement of the "railway" to transport the earth between the points before named for the appellees who are designated "contractor," proceeds:

"Railway will accomplish the movement aforesaid by using for that purpose a special train, or special trains, if in its judgment necessity so requires, and for the purpose of unloading the said earth at the plant of the said Japan Cotton Trading Company of Texas. Railway will furnish a plow and a ledgerwood and necessary cable for the operation thereof, and by the use thereof will unload the said earth from such cars at such point or places in and around said plant as may, from time to time, be indicated by contractor. To enable railway to unload the earth at different points in and around said plant, contractor, at its own cost and expense, will shift the track serving said plant; such shifting of said track, however, to be done under the supervision and to the satisfaction of railway.

"II. Contractor, in consideration of railway's covenants and all the extraordinary and special services to be performed by railway as herein set forth, covenants, and agrees to pay railway for such services the following sums, to wit:

"(a) The lawful published switching rate of $6.50 per car for the movements from point of origin to destination.

"(b) All expenses and wages of ledgerwood operator, and all other employees of railway during the time, and in so far as the same are employed in connection with the unloading of said material.

"(c) The full cost and expense of equipping necessary flat cars to be used in the service aforesaid with stakes, side boards, and steel aprons, provided, however, that, if railway can conveniently furnish aprons heretofore used by it in its own service, the same will be furnished without additional charge; all such additional equipment so placed on all such cars to become and remain the property of railway.

"(d) One-half of all costs and expenses incurred, sustained, or paid by railway in and for the operation of the train or trains and engine or engines used in the service aforesaid, including among other things, labor, fuel car inspectors, car repairers, and all other expenses of every kind and character which may be directly allocated to the use of said trains, engines, and cars, or the movement thereof in said service.

"III. Contractor also covenants and agrees to indemnify railway against, and hold it harmless from, all claims, liability, costs, and expenses, including attorney's fees, court costs, and expense of investigation, settlement or trial, and including also all claims and liabilities for injury to, or death of, persons other than employees of railway, and damage to, or destruction of, property arising from or growing out of the unloading of said material by railway.

"Railway expressly reserves, and it is hereby given and granted, the privilege of settling and compromising any and all such claims or liabilities at the sole costs and expense of contractor, provided, however, that no settlement involving the payment of exceeding $500 to any one person or $1,000 on account of any single occurrence shall be made by railway without the consent of contractor. Contractor will promptly pay the cost and expense of any such settlement upon receipt of railway's bill therefor.

"Contractor further covenants and agrees to pay the actual cost of railway of employers' liability insurance indemnifying railway against liability for injury to or death of any employee of railway resulting from, or growing out, of the unloading of said material by railway. The limits of such insurance as will be paid for by contractor shall not exceed $15,000 for injuries to, or death of, any one person, and $30,000 for injury to, or death of, two or more persons in any one accident."

To this petition the defendants interposed a general demurrer and numerous special exceptions. The demurrer and all the exceptions were sustained by the trial court, and plaintiff's suit dismissed.

[1] We cannot agree with the learned trial judge in the conclusion that the petition failed to state a cause of action for the $530 paid by plaintiff to its employee Davis, in settlement of his claim for damages because of personal injuries sustained by him while engaged in the service performed by appellant under its contract with appellees. We think subdivision (d) of the second paragraph of the contract before set out is broad enough to include this item as a part of the costs and expenses incurred and paid by the railway

company in the operation of its trains in performance of its contract undertaking. This subdivision, after enumerating certain kinds of costs and expenses, which are to be included in the obligations of defendants to pay "one-half of all the costs and expenses incurred, sustained, or paid by the railway in and for the operation of the trains" used in carrying out the contract, further expressly provides:

"And all other expenses of every kind and character, which may be directly allocated to the use of the said trains, engines, and cars in the movement thereof in said service."

The rule of ejusdem generis cannot be applied in construing these provisions of the contract. The kind of expenses enumerated exhausts all the class, and it would render the subsequent provisions for "expenses of every kind and character" without any effect or meaning to apply the rule invoked. Such construction of the provision would violate a fundamental rule of construction and defeat the clear intention of the parties as evidenced by the language used by them.

[2-4] It is, we think, so obviously true that it may be regarded as a matter of common knowledge that the amounts lawfully paid by any business enterprise for damages sustained by its employees by reason of personal injuries received in conducting the business, is a part of the expenses of the business. It is also a matter of general information and common knowledge that expenditures of this kind by railway companies are regarded by our national and state Railroad Commissions as necessary expenses in the operation of railways, which must be considered in determining what is a reasonable rate to be allowed for transportation charges. In these circumstances, we do not think it can be held as matter of law that the amount paid appellant's employee Davis for injuries received by him while assisting in the operation of its train, engaged in performing the work undertaken by it under its contract with appellee, is not an expense "which may be directly allocated" to the use of its trains in carrying out the contract. At most, there could only arise an issue of fact as to the understanding and intention of the parties in the use of the language employed in expressing their agreement, which cannot be raised by a general demurrer.

[5] We think it clear that article III of the contract does not in any way affect the obligation assumed by appellee under the subdivision of article II before quoted. The indemnity required of appellees under article III relates only to injuries received by appellant's employees while engaged in the extra or unusual services of trainmen of unloading the cars for appellees, and any costs or expense caused by injury to employees while so engaged is wholly assumed by appellees. It is, we think, manifest that the provisions of this article have no relation to injuries sustained by appellant's employees engaged in operating or moving its trains transporting the earth between the points named in the contract.

[6] We are inclined to agree with the holding of the trial court on appellant's claim for trackage charges paid the municipal railway for use of its tracks in transporting the earth. As we interpret the contract and the allegations of the petition, the published switching rate of $6.50, fixed by the Railroad Commission, necessarily includes these trackages charges. These switching charges as fixed by the Commission, as we understand it, are intended to include the whole cost of transportation from the points named in the order fixing them, and there is nothing in the allegations of the petition showing that the trackage charges were not included in the published rate. Since the cause must be reversed because of the error in sustaining the general demurrer, a further statement of our views on this question is unnecessary. If the facts justify it, the petition may be amended to show a cause of action for these trackage charges.

[7] We think the allegations of the petition as to the accounting rules of the Interstate Commerce Commission and the universal railroad custom and usage were subject to the special exception addressed thereto. No custom or usage could be binding upon the appellees, unless they had notice thereof, or such custom or usage could be regarded as a matter of common knowledge, and the allegations of the petition contain neither of these averments.

For the reasons indicated, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[8] Appellant has filed and presented a motion for rehearing, in which it makes the following complaint of a portion of the opinion heretofore filed in this case:

"Petitioner respectfully and earnestly submits to the court that it committed error in sustaining the ruling of the lower court on the special exceptions addressed to the paragraph of plaintiff's original petition, alleging that under the accounting rules of the Interstate Commerce Commission, and by universal railroad custom and usage, liabilities and expenditures of the character in suit were chargeable to the expense of operation, and that each of said liabilities did in fact, under said rules and custom, constitute a part of the expense and cost of operating the trains used in the service contemplated and required by said agreement.

"The opinion of the court in sustaining the ruling of the court below on the exceptions addressed to this paragraph uses this language: 'No custom or usage could be binding upon the appellees unless they had notice thereof, or

such custom or usage could be regarded as a matter of common knowledge, and the allegations of the petition contain neither of these averments.'

"We recognize the principle of law relied on by the court, and are fully aware that ordinarily knowledge of such custom and usages and rules would have to be alleged in order to bind the contracting parties thereby, but here the rules relied upon by plaintiff, and covered by this allegation, were a part of the law of the land, and, as such, knowledge of them would certainly be imputed to the defendant."

It seems to us that this statement of appellant's complaint answers itself. In so far as the rules of the Interstate Commerce Commission, which have the force and effect of public statutes, are applicable in this case, such rules are not required to be pleaded, and the holding in our former opinion, as above copied, was not intended as questioning the admissibility in evidence of these rules, and cannot be reasonably so construed.

The motion for rehearing is refused, though its evident purpose has been accomplished by obtaining the above statement of the effect and scope of our former holding.

Refused.